**NI INDUSTRIES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 87–1365.**

United States Court of Appeals,
Federal Circuit.

March 14, 1988.

James J. Gallagher, McKenna, Conner & Cuneo, Los Angeles, Cal., argued for appellant. With him on the brief was Richard B. Oliver.

Sheryl L. Floyd, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Also on the brief was Major Craig S. Clarke, Department of the Army, Falls Church, Va., of counsel.

Before FRIEDMAN and DAVIS, Circuit Judges, and MILLER, Senior Circuit Judge.

DAVIS, Circuit Judge.

NI Industries, Inc. (NI) appeals from a final decision of the Armed Services Board of Contract Appeals (ASBCA or Board), ASBCA No. 30293, upholding a contracting officer's decision to deny appellant's value engineering change proposal. Concluding that the agency improperly relied on an agency rule that should have been published but was not, we reverse and remand.

## I. *Background*

This dispute concerns an aspect of the government's value engineering change program (VECP). Under this program, a contractor may submit a VECP to the Government, proposing a change to the contract that will reduce the overall cost of contract performance to the Government without affecting essential requirements. If the agency adopts the proposed change, the submitting contractor is entitled to share in the resulting cost savings. The value engineering program is governed by the standard Value Engineering clause, Defense Acquisition Regulation (DAR) § 7–104.44, which was required to be included in all supply contracts exceeding $100,000.

On June 23, 1982, the United States Army Armament Materiel Readiness Command (ARRCOM) awarded basic ordering agreement DAAA09–82–G–7822 to NI for the production of pressfit and pinned eight-inch M509 steel body projectiles. On the next day, ARRCOM issued delivery order 0001 to NI for the production of 21,550 M509 projectiles. This delivery order contained the Value Engineering clause.

Following design changes to the projectile, the Army, on May 16, 1983, approved a contract change for the M509 to use threaded bases made from extruded aluminum rod—instead of the pressfit and pinned bases—and modified NI's contract accordingly on May 25, 1983. Throughout May 1983, NI repeatedly asked to be allowed to use aluminum forgings (instead of aluminum rods) to manufacture the threaded bases, stating that this substitution would save approximately $15 per projectile. NI also told ARRCOM of its intention to submit this cost-reduction proposal as a VECP. In the last week of May 1983, NI began preparing its written VECP.

However, at about the same time, the other manufacturer of the M509 projectile for the Army, Chamberlain Manufacturing Corp. (Chamberlain), independently thought of the same cost-saving change. On June 13, 1983, Chamberlain sent to the Army a VECP that suggested the use of forgings. On June 21, 1983, NI submitted its written

VECP. On that same day (June 21, 1983), NI telephoned the ARRCOM contract specialist and told him that NI had submitted a VECP requesting the use of forgings that would save $26 per unit. ARRCOM received Chamberlain's VECP that afternoon and entered it in the ARRCOM command log. On June 22 and 23, 1983, NI sent telexes to the contracting office summarizing its VECP. On June 27, 1983, ARRCOM received NI's VECP and logged it in. Government engineers eventually determined the VECP's submitted by NI and Chamberlain to be identical, although neither contractor knew beforehand of the other's submission of a VECP.

On July 15, 1983, ARRCOM personnel met to decide how to resolve the issue of duplicate VECP's. ARRCOM's value engineering office representative stated that it was ARRCOM policy to accept or reject identical VECP's according to the date of entry into the command log. Before July 1983, neither the contracting officers, contract specialists, nor the two contractors were aware of this policy. Because ARRCOM entered Chamberlain's VECP into the command log on June 21 and NI's VECP on June 27, the value engineering representative concluded that Chamberlain's VECP should be accepted and NI's VECP should be rejected. During this meeting, Mr. Sobkowiak, ARRCOM's contract specialist for NI's contract, did not mention that NI had provided him with oral notices of its VECP on May 28 and June 21, 1983.

After Mr. Sobkowiak requested the ARRCOM legal office to review NI's VECP and the legal office sent its opinion to Janice Isenberg, the newly-appointed contracting officer for NI's contract, Ms. Isenberg notified NI that its VECP was considered to be a duplicate submission.

On September 21, 1983, ARRCOM personnel again met to discuss NI's VECP. Once more they did not discuss NI's May and June communications concerning its intention to submit the VECP and its submission of the VECP. They ultimately decided to follow ARRCOM Standard Operating Procedure (SOP) 700-2, part of an internal, unpublished set of operating procedures. Under the appendix to SOP 700-2, the VECP proposal first entered on the command log is entitled to all the savings afforded by the provisions of its contract. (SOP 700-2 embodied the ARRCOM policy which, as we have stated, was previously unknown to NI, Chamberlain, the contracting officer, or the contract specialists.) Finally, on September 24, 1983, Ms. Isenberg, the CO, issued a final decision denying NI's VECP.

NI appealed this decision to the ASBCA which denied the appeal finding that, because NI's VECP was not accepted by ARRCOM, the Board could not review the CO's decision to accept or deny, absent an abuse of discretion by the CO.

## II. *Jurisdiction*

The Government urges that this court's scope of review of ASBCA decisions is limited and prevents us from examining whether the CO should have accepted NI's VECP. "Under our scope of review the Board's conclusions of law are not final and are thus freely reviewable, while the Board's findings of fact are final and our review is limited to a determination whether those findings are arbitrary, capricious, based on less than substantial evidence, or rendered in bad faith. 41 U.S.C. § 609(b) (1982)." *American Electronic Laboratories v. United States,* 774 F.2d 1110, 1112 (Fed.Cir.1985); *see also Darwin Constr. Co. v. United States,* 811 F.2d 593, 596 (Fed.Cir.1987).

The Board's determination that it lacked jurisdiction to review the CO's decision to reject NI's VECP was a conclusion of law. As such, it is properly subject to our review. Having found that the CO did not accept the VECP, the Board correctly ruled that her decision not to accept it was not subject to review on the merits, unless it was shown that she acted contrary to the law or abused her discretion in making that decision.[1] Since, as discussed below, we

---

1. It may be that the Board had no authority to review the agency's determination, for example, that the proposed VECP was not worthwhile, but the Board did have power to consider

find that the CO did act illegally and abused her discretion, we remand this case to the Board to consider the share of the VECP savings NI should receive.

### III. *Illegality and Abuse of Discretion*

■ The Board concluded, without elaboration, that the CO did not abuse her discretion in deciding to deny NI's VECP. This determination was erroneous as a matter of law.

The CO based her denial of the VECP on the language of the appendix to SOP 700–2. That appendix states:

*Policy for Processing of Duplicate VECP's:*

a. The first submitter of a VECP shall be entitled to all sharing afforded him by the applicable value engineering (VE) provisions of his instant contract. His rights shall in no way be reduced because of later submissions of essentially the same VECP. The first submitter shall be that contractor whose submission is first entered into the command log.

These rules, if they had been either published regulations or provisions of NI's contract, might have been sufficient to bar NI's claim to a portion of the savings from its suggested change. However—putting to one side the question of whether they accord with the policy of the Value Engineering clause—these rules are tainted by the glaring deficiency that they were unpublished.

Both statutes and case law make clear the requirement that regulations that affect persons' substantive rights be published in the Federal Register. The Administrative Procedure Act (APA) states this requirement explicitly:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

whether the agency acted illegally or followed improper procedures.

**2.** Contrary to the Government's argument, 5 U.S.C. § 553(a)(2) does not provide a public contracts exception to this publication requirement. Rather, that exception is limited to the

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency....

5 U.S.C. § 552(a) (1982).[2]

Furthermore, § 552(a) also provides:

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

The Supreme Court has emphasized that it will not condone the Government's use of unpublished regulations to affect adversely the substantive rights of individuals. *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *accord Alaniz v. Office of Personnel Management*, 728 F.2d 1460, 1470 (Fed.Cir.1984) ("agency actions effected in violation of the notice and comment procedures are void"). Explaining the policy behind § 552, the Court stated, "The [APA] was adopted to provide, *inter alia*, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations." *Morton* at 232, 94 S.Ct. at 1073 (citations omitted).

NI found itself facing the denial of its VECP because of precisely the scenario which the APA was designed to avoid. NI had no actual knowledge that this duplicate VECP policy existed (as it would have had if the Army had included the appendix to SOP 700–2 in its contract). It had no constructive notice of the policy (as it would have had if the regulation had been published in the Federal Register). NI had no reason even to suspect that such policy might exist because SOP 700–2 had not been distributed to the procurement divi-

publication of notices of rule making, as provided for in § 553. That exception is not applicable to the requirement found in § 552 for publication of substantive rules. *See, e.g., Nuclear Data, Inc. v. Atomic Energy Comm'n*, 344 F.Supp. 719, 723 (N.D.Ill.1972).

sions at ARRCOM. So the very people with whom NI was negotiating its contract were not even aware of the policy's existence.

Nevertheless, we must still determine whether the policy was a substantive rule requiring publication. The Supreme Court has defined a "substantive rule" as "one 'affecting the individual rights and obligations.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979) (citing *Morton*, 415 U.S. at 232, 94 S.Ct. at 1073). Certainly, by applying the duplicate VECP policy to deny NI a contract right to its share of the savings resulting from the value engineering change, the Army has affected NI's "individual rights." The parties stipulated before the Board that, but for the existence of that policy, NI's VECP would have been accepted. Similarly, no other published regulation or court decision entitles the first submitter of a VECP to reap all the savings realized by the Army's acceptance of the proposed change. We hold, therefore, that ARRCOM's policy for processing duplicate VECP's, as set forth in the appendix to SOP 700–2, is a substantive rule for purposes of the publication requirement of § 552.

Because the CO relied on this unpublished regulation to deny NI's VECP, in violation of the APA, we hold that she acted illegally and abused her discretion.[3] Her rejection of NI's VECP was therefore improper and cannot support the Board's decision. The case must be remanded for further proceedings.

### IV. *Disposition*

What should be done on that remand? We believe the evidence is clear that the CO should and would have accepted NI's VECP.[4] Government engineers determined the VECP's of the two contrac-

tors to be identical. Chamberlain's VECP was ultimately accepted. It was stipulated that, but for the unpublished regulation, the agency would have accepted NI's VECP. We find no case that suggests to us a good reason, or any reason, why the first actual submitter necessarily must receive all the savings accruing from a cost-reduction proposal, proffered more or less simultaneously, by more than one contractor.[5] To the contrary, the policy behind the Value Engineering clause would seem to suggest that the savings be shared, in order to encourage contractors to propose innovations that reduce the cost of performance of Government contracts.

Accordingly, we reverse the decision of the ASBCA and remand with directions to award NI its proper share of the savings resulting from its VECP.

REVERSED AND REMANDED.

---

**3.** NI makes arguments relating to other grounds on which it believes the CO abused her discretion. Having found illegality and an abuse of discretion inherent in the CO's reliance on regulations promulgated in violation of the APA, we need not address these other grounds.

**4.** We need not decide whether, as NI argues, the Army constructively accepted the VECP.

**5.** In this instance, NI had already told ARRCOM of its intention to submit a VECP and also informed the agency—the same day that Chamberlain's VECP was received—that NI had put its VECP into submission form. NI also sent telexes to ARRCOM (proposing the VECP) the two following days.