**RIG MASTERS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–19C.**

United States Court of Federal Claims.

Nov. 24, 1998.

Stephen D. Wheelis, Alexandria, Louisiana, for plaintiff.

Kenneth S. Kessler, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, Assistant Director Kirk T. Manhardt, all of the U.S. Department of Justice, Washington, D.C.

## OPINION

BRUGGINK, Judge.

This action arises out of a contract between Rig Masters, Inc., and the Army Corps of Engineers ("Corps"). Rig Masters was to inspect, operate, maintain, and repair several facilities owned by the Corps. In this suit, the contractor seeks recovery for a value engineering change proposal ("VECP") it alleges the Corps accepted and from which the Corps derived benefits. Pending is defendant's motion to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction or in the alternative, for summary judgment. In its motion to dismiss, defendant argues that this dispute is subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1994) ("CDA") and, because Rig Masters did not submit a claim to the Contracting Officer ("CO") pursuant to the CDA, this court lacks subject matter jurisdiction.

Plaintiff has moved to sever defendant's motion to dismiss in order for the court to initially address only that motion. For good cause, the motion to sever is granted and the court will address only the motion to dismiss, as it is dispositive. The matter has been fully briefed and oral argument is deemed unnecessary. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

On February 2, 1993, the Army Corps of Engineers, Vicksburg District, awarded Rig

Masters contract number DACW38–93–D–0010 ("contract") to inspect, operate, maintain, and repair several facilities, including the Tensas–Cocodrie Pumping Plant ("TCPP"). The Contract included Federal Acquisition Regulation ("FAR") 52.248–1, 48 C.F.R. § 52.248–1 (1997), commonly known as the Value Engineering Clause. This clause states that "[t]he Contractor is encouraged to develop, prepare and submit value engineering change proposals voluntarily. The Contractor shall share in any net acquisition savings[1] realized from accepted VECP's...." *Id.* 52.248–1(a). Paragraph (b)(3) of the clause defines a VECP as a proposal that results in a change to the contract and reduces "the overall projected cost to the agency without impairing essential functions or characteristics...."

Rig Masters' ability to challenge the Corps' acceptance or rejection of such proposals is addressed by FAR 52.248–1(e)(3). That section permits the CO to accept a VECP proposal, in whole or in part, through issuance of a modification to the contract. The section goes on, moreover, to provide that "[t]he Contracting Officer's decision to accept or reject all or part of any VECP and the decision as to which of the sharing rates applies shall be final and not subject to the Disputes clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. 601–613)." *Id.* Rig Masters relies on this latter provision to show that the dispute is not subject to the requirements of the CDA.

On February 16, 1994, Rig Masters submitted to the CO, Ms. June A. Hebler, a VECP which included a plan showing how certain changes in the operating procedures for the TCPP would result in the plant using less electricity and labor. On September 6, 1984, she responded that, although the VECP "had merit," the reduction in electricity costs proposed in the VECP would not be considered acquisition savings because Rig Masters' contract with the Corps did not require it to provide electricity.[2] The CO took the position that any savings resulting from the VECP would be considered collateral savings,[3] for which it was not obligated to pay.[4] Rather, the VECP clause permitted the contractor to share in "net acquisition savings,"[5] and that term was limited by regulation to savings "on this, the instant contract."[6] The CO nevertheless stated that even though the contract did not include a savings provision for collateral costs, she would seek a one-time waiver from Corps' Principal Assistant Responsible for Contracting ("PARC") to allow Rig Masters to participate in any collateral savings resulting from the VECP. On December 19, 1994, the PARC denied this request.

Rig Masters alleges that the Corps implemented the changes included in the VECP and that such changes resulted in substantial savings to the defendant. The contractor also claims that as a result of the success of these changes at the TCPP, the Corps implemented the plan at other plants with the same result. For the purposes of this motion, the court will assume that these allegations are correct.

In correspondence to the CO dated August 8 and August 24, 1995, Rig Masters once again requested participation in cost savings as a result of the VECP. On September 18,

---

1. FAR 52.248–1(b)(3) defines net acquisition savings as net cost reductions on the contract under which the VECP is submitted.

2. The Corps contracts for its utility service at the TCPP through Concordia Electric Cooperative, Inc.

3. FAR 52.248–1(b)(3) defines "collateral savings" as measurable savings in the agency's cost of operation, maintenance, logistic support or government-furnished property resulting from a VECP, exclusive of acquisition savings.

4. FAR 52.248–1(j), which allows the contractor to share in collateral savings resulting from an accepted VECP, was not included in the contract pursuant to Engineering Federal Acquisition Regulation Supplement Acquisition Letter 85–1, dated September 11, 1985, which states:

> When the value engineering clause is used in any solicitation or contract, the sharing collateral savings paragraph shall be deleted. It has been determined that the cost of calculating and tracking collateral savings will exceed the benefits derived in a contract calling for a value engineering incentive.

5. FAR 52.248–1(a).

6. FAR 52.248–1(b)(1).

1995, the Corps again informed Rig Masters that any savings as a result of the VECP would be considered "collateral" under the terms of the contract and therefore not compensable.

On May 22, 1996, Rig Masters filed suit in the United States District Court for the Western District of Louisiana. Finding that it did not have subject matter jurisdiction, the district court transferred the matter to this court pursuant to 28 U.S.C. § 1631 (1994). On February 6, 1997, Rig Masters filed its amended complaint. To date, the contractor has not submitted a certified claim to the CO pursuant to the CDA.

## DISCUSSION

In its motion to dismiss, defendant asserts that this court lacks jurisdiction over Count I of the amended complaint, the breach of contract count, because the dispute is subject to the CDA and because plaintiff failed to submit a properly certified claim to the CO. Rig Masters responds that disputes under the VECP clause were specifically exempted from the CDA by the inclusion in the contract of standard clause FAR 52.248–1(e)(3). Instead, Rig Masters relies on this court's general jurisdiction to review contract claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). Defendant moves to dismiss Counts II, III, and IV on the ground that this court has no jurisdiction over claims for specific performance, unjust enrichment or punitive damages.

■ The primary issue here is whether the contract provision exempting disputes over the VECP is enforceable. If it is, then Rig Masters can ignore the claims process of the CDA and come straight to this court under the Tucker act. In deciding this initial question, we begin with the premise that the rule-making power of an agency "is not the power to make law ... but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965) (quoting *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936)). The statute in this case is the CDA.

■ The CDA was a comprehensive reform of the process for resolving disputes arising out of government contracts claims. One of its purposes was to foster the prompt, efficient resolution of disputes between private contractors and the government. *See* S.Rep. No. 95–1118 at 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5235. A further purpose of the CDA was to provide a comprehensive, centralized system for adjudicating contract claims against the government. *See Universal Sur. Co. v. United States*, 10 Cl.Ct. 794, 801 (1986). To accomplish these goals, the Act has a broad reach. Disputes subject to this process include any express or implied contract entered into by an executive branch agency for the procurement of goods, services or disposal of personal property. 41 U.S.C. § 602(a). There are no exceptions to the reach of the CDA which are implicated in this case.

The presumption, therefore, must be that all disputes arising out of the contract between Rig Masters and the Corps are subject to the administrative dispute resolution mechanisms of the CDA. Those mechanisms begin with the submission to the CO of a written claim. *Id.* § 605(a).

In this context FAR 52.248–1(e)(3) obviously is discordant. It states that "[t]he Contracting Officer's decision to accept or reject all or part of any VECP and the decision as to which of the sharing rates applies shall be final and not subject to the Disputes clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. 601–613)." The regulation thus attempts to remove from CDA coverage claims involving the acceptance, rejection, or applicable sharing rates of a VECP and grants the CO final word with respect to such disputes.

Rig Masters' efforts to make this exclusion compatible with the overall design of the CDA are unavailing. The Federal Circuit was confronted with a similar question in *Burnside–Ott Aviation Training Center v. Dalton*, 107 F.3d 854, 858–59 (Fed.Cir.1997). In that case, the contract contained a provision, also required by regulation, which purported to insulate from board or court review

a dispute concerning an award fee. The court held that this provision was unenforceable as it was in direct conflict with the CDA: "any attempt to deprive the Board of power to hear a contract dispute that otherwise falls under the CDA conflicts with the normal de novo review mandated by the CDA and subverts the purpose of the CDA." *Id.* at 858. It therefore held the regulation to be invalid and the contract clause unenforceable.

Similarly, FAR 52.248–1(e)(3) purports to preclude board or court review of disputes over VECP's. The regulation is thus in direct conflict with the CDA and cannot stand. *See Argentinas v. United States,* 77 F.3d 1564, 1575 (Fed.Cir.1996); *Brush v. Office of Personnel Management,* 982 F.2d 1554, 1560 (Fed.Cir.1992); *see also United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).

 Because Rig Masters' VECP was submitted under the VECP clause, any resulting dispute must follow the procedures outlined in the CDA. In the absence of the submission of a claim to the CO, and the CO's final decision on that claim, this court lacks jurisdiction. *See James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996). Count I therefore must be dismissed.

The remaining counts must also be dismissed. In Count II Rig Masters seeks an order of specific performance directing the Corps to reimburse it for all expenses incurred in developing the VECP and for savings experienced by the Corps. It is well established that this court does not have jurisdiction over claims for specific performance. *See United States v. King,* 395 U.S. 1, 3–4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Logan Canyon Cattle Ass'n v. United States,* 34 Fed.Cl. 165, 168 & n. 4 (1995); *Edwards v. United States,* 19 Cl.Ct. 663, 668 n. 5 (1990). Count II therefore seeks relief the court is not empowered to grant.

In Count III, Rig Masters requests payment on the theory that the Corps has been unjustly enriched through the implementation of the VECP. A claim based solely on unjust enrichment is equitable in nature and falls outside the jurisdiction of this court.

*See Wainwright Realty Co. v. United States,* 28 Fed.Cl. 425, 426 (1993) (citing *Aetna Cas. & Sur. Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059–60 (1981) (stating that an unjust enrichment theory of recovery is based upon a contract implied in law, over which this court has not been given jurisdiction)). Count IV must be dismissed, as it claims that the Corp's allegedly deceptive acts entitle Rig Masters to punitive damages, a remedy not available in this court. *See Garner v. United States,* 230 Ct.Cl. 941, 1982 WL 25283 (1982) ("the granting of ... punitive damages [is] not within the jurisdiction of this court"); *Vincin v. United States,* 199 Ct.Cl. 762, 765, 468 F.2d 930, 932 (1972).

## CONCLUSION

For the reasons stated above, this court lacks subject matter jurisdiction over all counts of Rig Masters' amended complaint. Accordingly, defendant's motion to dismiss the complaint is granted without prejudice. If Rig Masters attempts to comply with the procedural requirements of the CDA and files a complaint seeking review of a final decision by the CO, the Clerk shall waive the filing fee. No costs.