**RCS ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–724C.

United States Court of Federal Claims.

April 26, 2000.

William E. Myrick, Denver, CO, for plaintiff. David Hollar, of counsel.

Jeffrey A. Belkin, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant. Major David Conn, U.S. Army Legal Services Agency, Litigation Division, of counsel.

## OPINION

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can

be granted pursuant to RCFC 12(b)(1), (4). Plaintiff's suit seeks damages pursuant to its contract with the United States Army to audit the telephone system on a military base. The issues to be decided are whether the contract allows plaintiff's claim for a percentage of identified overbillings; whether plaintiff's claim for breach of contract damages resulting from government interference with contract performance is properly before the court; and whether the court has jurisdiction over plaintiff's claim for commissions under the Value Engineering clause of the contract. The court rules that plaintiff's claim for commissions in Count I is inconsistent with the express provisions of the contract, that its claims for interference were not presented as a specific monetary demand, and that plaintiff's claim for commissions under the Value Engineering clause is barred by the clause itself.[1]

## FACTS

RCS Enterprises, Inc. ("plaintiff"), a general partnership organized under the laws of the State of Colorado, performs telecommunications auditing and consulting services. Plaintiff is a Small Business Administration certified section 8(a) contractor. *See* 15 U.S.C. § 637(a) (1994). On January 9, 1998, plaintiff entered into an agreement with the United States Army Signal Command (the "AFSC"), located at Fort Huachuca, Arizona, to provide telephone auditing services for the Army's White Sands Missile Range in New Mexico and its associated sites (the "WSMR"). Pursuant to the contract, plaintiff was to "audit and review base charges, ensure correct tariffs and rates are charged, confirm completed and/or non-completed calls, and other determining factors with respect to telecommunications bills." The contract period began on January 9, 1998, for an indeterminate period "through the completion of the initial audit," with two option years.

In order to complete performance, plaintiff's findings were to be compiled into a final report, which was to detail all "one-time and future savings based on an adjustment to tariffs and/or over-billings." Plaintiff was to recommend specific actions for future savings and provide explanations for all such actions. Throughout the process plaintiff was required to keep the AFSC apprised of its progress by providing monthly status reports and an outline and draft of the final audit. Correspondingly, the AFSC was obliged to execute the necessary authorizations for plaintiff to complete its audits, to provide plaintiff with complete access to past and present telephone records, and to ensure the cooperation of WSMR personnel.

Plaintiff's compensation for performance was a nominal fee of $150.00 plus 50% of the cost savings generated by its services. The total cost savings was determined in one of two ways, depending upon the source of the savings. When plaintiff identified past overbillings, plaintiff was to arrange for the carrier(s) to remit plaintiff's share directly and give the AFSC a credit in the amount of the remainder. The contract explicitly states that "payment to [plaintiff] is only activated, in the event a credit or savings due to the elimination of incorrect billings and/or overcharges is received by the Government." Alternatively, when plaintiff identified potential future savings, "[i]nvoices resulting from future value engineered savings[ ] will be submitted monthly over the course of two (2) years, identifying the source of the savings." Among other clauses incorporated into the contract were the Federal Acquisition Regulation (FAR) Disputes clause, 48 C.F.R. § 52.233–1 (1995), the Value Engineering clause, 48 C.F.R. § 52.248–1 (1989), and the Government Delay of Work clause, FAR § 52.212–15 (1995) (redesignated § 52.242–17).

Plaintiff began its audit of the facilities at the WSMR on January 28, 1998. In the first month of performance, plaintiff identified many "irregularities," "including numerous collect calls accepted by WSMR personnel as well as phone-sex, phone-psychic and other 900–number services made by WSMR personnel." Am. Compl. filed Mar. 6, 2000, ¶ 10.

---

1. Although plaintiff filed a First Amended Complaint on March 6, 2000, after briefing was completed, defendant is correct that the new facts pleaded do not cure the defects presented in the original complaint. *See* Def's Br. filed Feb. 17, 2000, at 1 n. 1.

Plaintiff further alleges that it immediately encountered resistance from WSMR personnel, who delayed performance by failing to provide billing information in a timely manner, including billing facilities information, service provider contract and billing information, and call accounting system information, and by failing to return plaintiff's telephone calls. Plaintiff discovered that the records that it did receive were not maintained in accordance with Army guidelines and noted other inconsistencies, including omissions of collect and operator-assisted calls and missing accounting records. Plaintiff complained of these obstacles to the AFSC, but allegedly received no assistance in dealing with WSMR personnel.

Despite the lack of cooperation, plaintiff completed its final report on July 10, 1998, "with the limited information made available." Am. Compl. ¶ 14. According to plaintiff, the final report identified several refunds or credits due as a result of overbillings, totaling approximately $192,000.00 in savings to the Government. Further, plaintiff claims that it recommended several measures for future cost savings which could have resulted in savings of as much as $9,227.20 per month over a two-year period. On September 17, 1998, plaintiff submitted another report—the traffic study—which identified additional measures for future cost savings, totaling as much as $2,041.30 per month, over a two-year period. Plaintiff's asserted potential future cost savings total slightly more than $260,000.00. Taken together, plaintiff asserts that it should have received as much as $231,323.48 in commissions.[2]

The AFSC orally rejected in their entirety plaintiff's cost savings recommendations that were made in the final report and the traffic study. Although plaintiff sought a more detailed written explanation for this decision, none was ever received. On November 20, 1998, plaintiff submitted a claim for the above amounts to the contracting officer. In that claim plaintiff asserted that its performance was hindered by a lack of cooperation and that its recommendations should have

been accepted. Plaintiff alleged a total of $674,000.00 in cost savings, past and future, which would have yielded $337,000.00 in lost commissions.[3] By letter dated January 22, 1999, the contracting officer denied plaintiff's claim in full.

Thereafter, on August 23, 1999, plaintiff filed this action. In Count I plaintiff alleges that the AFSC breached the contract for the WSMR telecommunications audit by failing to cooperate with performance and rejecting the recommendations made in the final report and the traffic study. In Count II plaintiff alleges that it had a reasonable expectation that it would be paid for the services rendered, of which the AFSC knew or should have known. In its amended complaint, plaintiff also asserts, apparently in contradiction to the allegations of its claim before the contracting officer, that, subsequent to rejection, the AFSC misappropriated and instituted plaintiff's recommendations without compensation.

## DISCUSSION

1. *Standards for motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim*

When a federal court reviews the sufficiency of the complaint, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* To this end, the court must accept as true the facts alleged in the complaint, *see Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader. *See Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). It is well-settled doctrine that a complaint will not be dismissed

---

**2.** This is the amount, plus interest and fees, sought by plaintiff in this lawsuit.

**3.** The court is unable to reconcile the amount plaintiff sought before the contracting officer with the amount it seeks in this action.

for lack of subject matter jurisdiction or for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Therefore, when the facts alleged in the complaint reveal "any possible basis on which the nonmovant might prevail, the motion must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir.1988) (citations omitted).

The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998). At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). However, because proper jurisdiction is not merely a pleading requirement, "but rather an indispensable part of the plaintiff's case, each element [of subject matter jurisdiction] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing *National Wildlife Fed.*, 497 U.S. at 883–89, 110 S.Ct. 3177; *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 527 n. 6, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Brennan, J., dissenting)). Therefore, as the party invoking federal jurisdiction in the action, plaintiff bears the burden of pleading the facts upon which the court's jurisdiction depends. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court follows the accepted rule that a complaint should be dismissed only "where the plaintiff cannot assert a set of facts that supports its claim." *New Valley Corp. v. United States*, 119 F.3d, 1576, 1579 (Fed.Cir.1997). The court must accept the factual allegations of the complaint as true, indulging all inferences in favor of plaintiff. A dismissal for failure to state a claim, unlike a dismissal for lack of subject matter jurisdiction, is a decision on the merits, calling for the court to focus on the allegations of the complaint. *See Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995). Because granting such a motion terminates the case on its merits, the complaint must be construed broadly. *See Ponder v. United States*, 117 F.3d 549, 552–53 (Fed.Cir.1997). The claim should be dismissed only when no set of facts exists that would entitle plaintiff to relief. *See Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992).

In this case plaintiff's November 20, 1998 letter to the contracting officer plays a central role. At argument plaintiff's counsel stated that plaintiff had no objection to the court's considering it on a motion to dismiss. *See* RCFC 12(b) (converting a Rule 12(b)(4) motion to a motion for summary judgment when proponent relies on material beyond the complaint). The contract itself is deemed part of the complaint. *See* RCFC 9(h)(3), 10(c).

## 2. Commissions on overbillings

The amended complaint alleges that plaintiff is entitled to recover a commission on the overbillings identified in its final report. The final report lists several areas of refunds or credits as a result of unauthorized charges or overcharging. Defendant moves to dismiss for failure to state a claim upon which relief can be granted because the contract requires plaintiff to seek reimbursements directly from the telephone carrier(s).

■ The contract details a method for plaintiff to obtain payment for identifying incorrect billings or overcharges. Paragraph G.1.1 states unambiguously that plaintiff "shall arrange for the carrier(s) to provide [plaintiff's] share of the overcharges directly to [plaintiff]." Where contract provisions,

when read in context, are clear and unequivocal, "they must be given their plain and ordinary meaning," *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed.Cir. 1993) (citing *George Hyman Constr. Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir. 1987)), and the court may not resort to extrinsic evidence to interpret them, *see Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed.Cir.1994) (citations omitted). Assuming that the final report identified past overcharges, under the contract plaintiff had the sole responsibility to seek reimbursements directly from the telephone carrier(s).[4] Thus, plaintiff cannot maintain a cause of action against the United States for those amounts.

Plaintiff protests this result, arguing that the dilatory and obstructionist tactics employed by WSMR personnel effectively prevented plaintiff from securing refunds from the telephone carrier(s). Paragraph G.1.1 goes on to state: "The [contracting officer] will be available to assist in this process." Paragraph C.2.2 of the contract provides: "The Government will execute all authorizations that are reasonable and necessary for [plaintiff] to obtain billing information. [Plaintiff] will be given complete access to past and present telephone invoices, and reasonable access to [WSMR] personnel, including the opportunity to visit subject sites at the [WSMR's] convenience." Interpreting the contract as a whole, plaintiff argues, the AFSC had an affirmative duty to cooperate with plaintiff. With this much the court agrees.

 `If the duty to cooperate were not enforceable, the Government would be immune from liability regardless of its unreasonableness, and contractors would have no recourse against an agency, or agency personnel, hell-bent on impeding performance. Plaintiff then asserts that the Government's failure to cooperate made it impossible for plaintiff to identify overbillings and to recover from the telephone carrier(s). However, plaintiff's commission is derived as a percentage of overbillings actually identified in the course of contract performance. Plaintiff's

amended complaint lists an amount for these billings. *See* Am. Compl. ¶ 15 ("[R]efunds or credits total as much as $192,395.67."). Plaintiff pleads that it was able to identify these overbillings, albeit in a lesser amount than if the AFSC had cooperated with plaintiff or had not otherwise obstructed its performance. Because plaintiff has failed to seek reimbursement from any carrier as a predicate to recovery, plaintiff's claim for reimbursements for past overbillings in the amount of $192,395.67 fails to state a claim upon which relief can be granted. However, insofar as the amended complaint seeks relief because the Government prevented plaintiff from identifying all overcharges, plaintiff states a claim for breach of contract. *See* Am. Compl. ¶ 29.a.–c. The problem is that plaintiff's claim letter failed to ask for any amount based on such a claim. Regulations implementing the Contract Disputes Act of 1978, 41 U.S.C.A. §§ 601–613 (West 1987 & Supp.1999) (the "CDA"), require that a claimant bringing suit against the United States seek "the payment of money in a sum certain." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (1995) (en banc) (construing FAR § 33.201).

### 3. *Interference with contract performance*

 In Count I plaintiff seeks relief because the Government allegedly interfered with contract performance by failing to execute necessary releases, to provide complete access to telephone invoices, and to provide access to WSMR personnel. Defendant asserts that plaintiff's claim that the Government failed to execute necessary releases is barred because it was never submitted to the contracting officer as required by section 605(a) of the CDA. For the Court of Federal Claims to exercise jurisdiction, the CDA requires as a prerequisite a valid final decision on the claim by the contracting officer. *See James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1542 (Fed.Cir.1996). Plaintiff offers no credible counter-argument.

---

4. Defendant contends that plaintiff has not produced any records which indicate that it ever

requested reimbursements from the telephone carrier(s).

■ Defendant contends that the other two allegations—that the AFSC failed to provide access to telephone invoices or to WSMR personnel—identify no costs, in either the claim before the contracting officer or the amended complaint. Again, plaintiff offers no credible counter-argument. Because plaintiff has presented no monetary claim based upon the AFSC's interference with its performance for a sum certain, the court cannot exercise jurisdiction. *See Reflectone*, 60 F.3d at 1575.

Plaintiff also contends in Count I that the Government breached the contract by failing to accept the results of the final report and to implement the advice and recommendations therein. Those allegations are the predicate for Count II of the amended complaint and are addressed in the next part of this opinion.

#### 4. *Reimbursements for future savings*

Count II[5] seeks to recover as much as $231,323.48, representing a share of the projected future savings from recommendations made in plaintiff's final report and the traffic study. Count I includes similar allegations. Defendant moves to dismiss for lack of subject matter jurisdiction because the AFSC rejected all of plaintiff's recommendations, and per the contact the merits of the contracting officer's final decisions to accept or to reject recommendations are unreviewable.

The contract, appended to plaintiff's original complaint, provides that invoices for future cost savings, based on plaintiff's recommendations, will be submitted to the AFSC monthly. These invoices, by the terms of the contract, are treated as Value Engineering Change Proposals ("VECPs") pursuant to FAR § 52.248–1 (1989) (the "Value Engineering" clause). Under the Value Engineering clause, the contractor may submit VECPs to suggest changes to the contract which will reduce the overall cost of contract performance without affecting essential requirements. VECPs encourage the contractor to propose changes voluntarily because, if the agency were to adopt the change, the contractor would be entitled to some portion of the resulting savings. Section (e)(3) of the Value Engineering clause provides:

> Any VECP may be accepted, in whole or in part, by the Contracting Officer's award of a modification to this contract citing this clause and made either before or within a reasonable time after contract performance is completed. Until such a contract modification applies a VECP to this contract, the Contractor shall perform in accordance with the existing contract. The Contracting Officer's decision to accept or reject all or part of any VECP and the decision as to which of the sharing rates applies shall be final and not subject to . . . litigation under the [CDA].

FAR § 52.248–1(e)(3). In this case the contracting officer rejected outright all of plaintiff's VECPs. Accordingly, defendant argues that the Value Engineering clause bars plaintiff from appealing the merits of a contracting officer's decision to reject its proposals. Plaintiff protests that, to the extent it attempts to divest the court of jurisdiction, the Value Engineering clause conflicts with the CDA and therefore is void.

■ "Generally, the parties to a contract may voluntarily waive certain rights, including the right to receive an impartial and independent federal adjudication, otherwise available to the parties under the law." *Burnside–Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 858 (Fed.Cir.1997) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848–49, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). Also, generally, a contract clause or provision that violates a

---

5. Count II is plead as a claim for *quantum meruit,* alleging that plaintiff rendered valuable services with the reasonable expectation that it would be compensated. Count II further charges that the AFSC knew or should have known of this expectation. Defendant moves to dismiss because the court lacks jurisdiction over such claims. Defendant's position is well taken, although the claim actually sounds as a breach of contract. Because a claim for *quantum meruit*

relief is an action on an implied-in-law contract, *see Fincke v. United States*, 230 Ct.Cl. 233, 246, 675 F.2d 289, 296 (1982), the Court of Federal Claims lacks jurisdiction. At argument plaintiff stated that it pleaded equitable relief as an alternative to its breach claim and conceded that it asserted neither a claim based on a *quantum meruit* nor an implied-in-fact contract, as defendant acknowledges that the express written contract between the parties governs.

federal statute is invalid. *See American Airlines, Inc. v. Austin,* 75 F.3d 1535, 1538 (Fed.Cir.1996). These two canonic principles of contract law appear to clash in the case at bar. The CDA seeks to provide a comprehensive system of rules for resolving contract disputes with the Government. Thus, its scope is necessarily broad. Pursuant to the CDA, all claims that relate to a contract and that are the subject of a final decision by the contracting officer are appealable to the Court of Federal Claims. *See* 41 U.S.C.A. § 605(a), (b). Against this backdrop the court is faced with a contract clause that purports to exempt from the review process of the CDA both the contracting officer's final decision to accept or to reject a VECP and the decision to determine which sharing rate applies.

■ Defendant relies on *NI Industries, Inc. v. United States,* 841 F.2d 1104 (Fed.Cir. 1988), as authority for the proposition that a contract clause excluding the contracting officer's acceptance or rejection of proposed changes to the contract from CDA review is enforceable. In *NI Industries,* a case brought under the CDA, plaintiff contractor appealed the final decision of the contracting officer rejecting its VECP. The Armed Services Board of Contract Appeals (the "Board") ruled that, because the contractor's VECP was not accepted, the Board was precluded from reviewing the merits of that decision pursuant to a contract clause similar to the one at issue in this case. On appeal the Federal Circuit agreed: "Having found that the CO did not accept the VECP, the Board correctly ruled that her decision not to accept it was not subject to review on the merits, unless it was shown that she acted contrary to the law or abused her discretion in making that decision." 841 F.2d at 1106 (footnote omitted).[6] Court of Federal Claims precedent can be found that supports this view. *See, e.g., Fort Myer Constr. Corp. v. United States,* 42 Fed.Cl. 720, 723 n. 1 (1999) ("[The Government's] rejection of plaintiff's proposal would necessarily preclude plaintiff from filing suit in this Court.") (*dictum*),

*aff'd,* No. 99–5063, 2000 WL 133847, at *1 (Fed.Cir. Jan. 24, 2000) (table); *Robin Indus., Inc. v. United States,* 29 Fed.Cl. 122, 127 (1993) ("Boards of contract appeals have uniformly refused to review the propriety of a VECP rejection.") (citing authorities); *see also Derrick Electric Co.,* 220 Ct.Cl. 673, 674, 676, 618 F.2d 122 (1979) (holding that board of contract appeals had jurisdiction to review whether proposal met the requirements for acceptance under regulation and terms of contract, but contracting officer's decision to reject on merits was unreviewable).

Plaintiff points to *Rig Masters, Inc. v. United States,* 42 Fed.Cl. 369 (1998), as countervailing authority. In *Rig Masters* plaintiff contractor complained that the agency had accepted and implemented its VECP, but failed to pay the contractor a share of the savings. Defendant argued that the court lacked jurisdiction over the contractor's claim because the contractor had failed to submit a certified claim to the contracting officer, a prerequisite of appeal under the CDA. The contractor countered that because the Value Engineering clause exempted all disputes over VECPs from CDA review, it could ignore the CDA's procedural requirements and proceed directly to the Court of Federal Claims under the Tucker Act. The court dismissed the case for lack of jurisdiction, holding that because the regulation setting forth the Value Engineering clause was "in direct conflict with the CDA and cannot stand," the contractor's failure to submit its claims to the contracting officer was fatal. *Id.* at 373 (citations omitted). Relying primarily on *Burnside–Ott,* the court in *Rig Masters* began its analysis with "the presumption" that "all disputes arising out of a contract ... are subject to ... the CDA." 42 Fed.Cl. at 372. Although not arising in the context of a VECP, the contractor's claim in *Burnside–Ott,* as in *Rig Masters,* "center[ed] on the government's calculation of the award fee." *Burnside–Ott,* 107 F.3d at 856. The "award fee" contract provision exempted the contracting officer's unilateral determination from CDA review. After a lengthy analysis of the legislative purposes driving enact-

---

6. The Federal Circuit went on to reverse the Board's decision, finding that the contracting officer followed improper procedures.

ment of the CDA, the Federal Circuit held that "any attempt to deprive [a court] of power to hear a contract dispute that otherwise falls under the CDA conflicts with the normal *de novo* review mandated by the CDA and subverts the purpose of the CDA." *Id.* at 858.

At first blush the relevant case law appears to be in conflict. Plaintiff asserts that the broad and inclusive language from *Burnside–Ott* and *Rig Masters* is controlling. However, such an interpretation impermissibly would nullify *NI Industries*. It is elementary that a court can neither accept nor apply a legal rule that directly contradicts binding precedent. To the contrary, when interpreting the decisions of the Federal Circuit, the Court of Federal Claims must endeavor to harmonize precedent to preserve a coherent body of law. Consistent with this canon of interpretation, defendant offers a reading which reconciles *Burnside–Ott* with *NI Industries*.[7]

Defendant explains that the relevant section of Value Engineering clause—which exempts both the contracting officer's decision to accept or to reject a VECP and the decision as to which of the sharing rates applies from CDA coverage—stands for, and is best understood when viewed as, two distinct propositions. The first subject of the final sentence states that the contracting officer's final decision to accept or to reject a VECP is not subject to review under the CDA. This reading was upheld in *NI Industries*. The second subject of the final sentence states that the contracting officer's final decision to determine the contractor's share of the savings is not subject to review under the CDA. This proposition was held to violate the CDA in *Rig Masters,* based on the *Burnside–Ott* decision.

The most compelling support for this interpretation is found in a footnote in *NI Industries*. Clarifying its holding that the Board

had correctly ruled that the contracting officer's decision not to accept the VECP was not subject to review on the merits, unless it was shown that the contracting officer acted contrary to the law, the Federal Circuit explained: "It may be that the Board had no authority to review the agency's determination, for example, that the proposed VECP was not worthwhile, but the Board did have power to consider whether the agency acted illegally or followed improper procedures." *NI Indus.,* 841 F.2d at 1106 n. 1. Like *NI Industries* the case at bar deals with the first proposition—the contracting officer's acceptance or rejection of the contractor's proposal—rather than the determination of the contractor's share of the savings. This was not the situation before the court in *Rig Masters* and, for that reason, the broad language in the opinion cited by plaintiff does not control this issue.

The dichotomy proposed by defendant in assessing the Value Engineering clause comports with the greater body of contract law. The distinction between the VECP's acceptance or rejection and the determination of the contractor's share of the savings is analogous to the distinction between contract formation and contract enforcement. The latter occurs pursuant to the guidelines established in the contract and therefore cannot be excepted from the CDA; the former occurs only by the mutual agreement of the parties—the process of offer and acceptance. In the context of a VECP, the contract, of course, may establish criteria to which that process is beholden. The court has scoured plaintiff's amended complaint and the contract for evidence that plaintiff is alleging that the contracting officer did not follow a contractual requirement in rejecting the recommendations in plaintiff's final report. None is present.[8] Because the provision of the Value Engineering clause exempting acceptance or rejection of contractor change

7. The court is not unmindful that the panel in *Burnside–Ott* took a rigorous view of jurisdiction-defeating provisions: "[T]he CDA trumps a contract provision inserted by the parties that purports to divest the Board [or the Court of Federal Claims] of jurisdiction, unless the contract provision otherwise depriving jurisdiction is itself a matter of statute primacy." 107 F.3d at 859.

Although defendant cannot point to such a statute in this case, *NI Industries* cannot be ignored.

8. At argument plaintiff contended that "some impropriety was involved" in the lack of cooperation that hampered preparation of the final report.

proposals is at the Government's option without any procedures or standards regarding the Government's acceptance or rejection, defendant's reading is not in conflict with *Rig Masters*. Moreover, because defendant's reading offers the only plausible interpretation that reconciles *Burnside–Ott* with *NI Industries*, plaintiff's claim for reimbursements for future savings is dismissed for lack of subject matter jurisdiction.

Insofar as the amended complaint alleges a constructive acceptance, *see* Am. Compl. ¶ 23 ("Upon information and belief, [plaintiff's] recommendations were misappropriated and instituted, without compensation to [plaintiff]."), plaintiff's letter of November 20, 1998, failed to present this claim to the contracting officer. *James M. Ellett*, 93 F.3d at 1542.

### CONCLUSION

Accordingly, based on the foregoing:

1. Defendant's motion to dismiss is granted, and the Clerk of the Court shall enter judgment for defendant on Count I of the First Amended Complaint, insofar as plaintiff seeks to recover for past overbillings in the amount of $192,395.67, and dismiss the balance of Count I and Count II without prejudice for lack of subject matter jurisdiction.

2. Should plaintiff, after having presented its claims to the contracting officer and obtaining a decision thereon, file another complaint pleading similar allegations as the claims dismissed for failure to submit to the contracting officer or to state a sum certain, the filing fee shall be waived, the case shall be assigned to the this judge, and proceedings will be expedited.

**IT IS SO ORDERED**.

No costs.