RCS ENTERPRISES, a Colorado General Partnership, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–156C.

United States Court of Federal Claims.

Aug. 22, 2002.

William E. Myrick, Denver, CO, for plaintiff. David Hollar, of counsel.

John C. Einstman, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Major Scott E. Reid, U.S. Army Litigation Division, of counsel.

## ORDER

MILLER, Judge.

Having ruled on certain issues governing liability in *RCS Enterprises, Inc. v. United States*, 46 Fed.Cl. 509 (2000) ("*RCS I* "), and having further ordered that plaintiff may not seek damages in this action that were not quantified in plaintiff's September 22, 2000 letter to the contracting officer, the court turns to Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims for "Past Refunds" and "Future Savings." At issue is whether these claims are barred by the doctrine of claim preclusion,[1] and whether genuine issues of fact exist as to the effect on plaintiff's performance of the Government's failure to cooperate. Argument is deemed unnecessary.

The facts of this case are more fully set out in· *RCS I*, 46 Fed.Cl. at 511–12, and are repeated here only to the extent necessary. RCS Enterprises, Inc. ("plaintiff"), provides telecommunications auditing and consulting services. On January 9, 1998, plaintiff entered into an agreement with the United States Army Signal Command (the "ASC"), located at Fort Huachuca, Arizona, to provide telephone auditing services for the Army's White Sands Missile Range in New Mexico (the "WSMR"). Pursuant to the contract, plaintiff was to identify any overbillings among telephone charges for the WSMR and to recommend specific actions for future savings.

Plaintiff's compensation under the contract was a nominal fee of $150.00, plus 50% of the cost savings generated by its services. The total cost savings were determined in one of two ways, depending upon the source of the savings. Under section G.1.1 of the contract, when plaintiff identified past overbillings, plaintiff was to arrange for the carrier(s) to remit plaintiff's share directly to plaintiff and to give the ASC a credit in the amount of the remainder.[2] Alternatively, when plaintiff identified potential future savings, section G.1.3 of the contract provided that "[i]nvoices resulting from future value engineered savings, will be submitted monthly over the course of two (2) years, identifying the source of the savings." These invoices, by the terms of the contract, are treated as Value Engineering Change Proposals ("VECPs") pursuant to 48 C.F.R. (FAR) § 52.248–1 (2001). *See RCS I*, 46 Fed.Cl. at 515.

Plaintiff alleges that it immediately encountered resistance from WSMR personnel, who delayed performance by failing to provide billing information in a timely manner and by otherwise failing to cooperate with plaintiff. Plaintiff nevertheless delivered to the ASC a Final Report on July 10, 1998, which, according to plaintiff, identified several refunds or credits due as a result of overbillings, totaling approximately $295,268.98 in savings to the Government. Further, plaintiff claims that it recommended several measures for future cost savings totaling slightly more than $378,854.78. Taken together, plaintiff asserts that it should have received as much as $337,061.88 in commissions.

The ASC orally rejected all of the cost-savings recommendations made in the Final Report. On November 20, 1998, plaintiff submitted a claim to the contracting officer that was denied in full by letter dated January 22, 1999. On August 23, 1999, plaintiff initiated a suit in the Court of Federal Claims. Plaintiff's first amended complaint,

---

1. By order entered on July 18, 2002, the court notified the parties that it was of the view that *res judicata* was dispositive, which was not the ground relied upon by defendant in its motion. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 777–78 (Fed.Cir.1995) ("A court may enter summary judgment on a ground different from those mentioned in the motion only if the parties have had an adequate opportunity to argue and present evidence on that point and summary judgment otherwise is appropriate." (internal quotations omitted)); *Cooper v. Ford Motor Co.,* 748 F.2d 677, 680 (Fed.Cir.1984) (court may not grant summary judgment when

basis for judgment not raised by movant with sufficient precision for non-movant to respond). The parties were directed to file supplemental briefs addressing the applicability of *res judicata.* Both parties responded, defendant taking the position that its motion should be granted based on *res judicata.*

2. The ASC was obliged to execute the necessary authorizations for plaintiff to complete its audits, to provide plaintiff with complete access to past and present telephone records, and to ensure the cooperation of WSMR personnel.

filed on March 6, 2000, alleged an entitlement to a commission on the overbillings identified in the Final Report and sought damages for breach of contract based on ASC's failure to cooperate with plaintiff and its rejection of plaintiff's recommendations.[3]

In an opinion dated April 26, 2000, the court entered partial judgment for defendant and dismissed the balance of plaintiff's complaint for lack of jurisdiction. *RCS I*, 46 Fed.Cl. at 518. The court concluded that, under the contract, plaintiff was obligated to seek reimbursement for overbillings directly from the telephone carriers. *Id.* at 513–14. Because plaintiff had not done so, the court entered judgment in favor of defendant with respect to plaintiff's claims for $192,395.67 in overbillings identified in the Final Report. *Id.* at 514. The court dismissed plaintiff's claims to the extent that they sought compensation for overbillings that could not be identified because of the ASC's failure to cooperate. Although the ASC had an affirmative duty to cooperate, the court nevertheless determined that jurisdiction was lacking because plaintiff's claim to the contracting officer failed to demand an amount certain based on the ASC's failure to cooperate. *Id.* With regard to the ASC's rejection of plaintiff's recommendations for future savings, the court determined that, under the express terms of the contract, the contracting officer's decision to accept or reject plaintiff's recommendations was unreviewable. *Id.* at 515, 518.

On March 20, 2001, plaintiff filed a second amended complaint consisting of seven counts. The First Claim for Relief, breach of contract, alleges that ASC failed to comply with section C.2.2 of the contract, which required the ASC to provide authorizations and access to invoices and agency personnel. The Second Claim for Relief alleges that the ASC breached a duty to assist plaintiff in obtaining available refunds and credits. The Third Claim for Relief alleges that the ASC breached a contractual duty when it refused to seek certain refunds and future savings. The Fourth Claim for Relief alleges that the ASC breached the contract when it subsequently obtained refunds and future savings identified in the Final Report without compensating plaintiff. The Fifth Claim for Relief alleges that the ASC misrepresented which telephone lines were dedicated to governmental use and which lines were dedicated to private, non-governmental use; that the ASC misrepresented which charges it already had been reimbursed for; and that the contract allocated to the ASC the risk of additional costs and expenses caused by such errors. The Sixth Claim for Relief alleges that the contract allocated to the·ASC the risk of additional costs and expenses caused by the ASC's failure to maintain records in accordance with Army regulations. Finally, the Seventh Claim for Relief alleges that the contract allocated to the ASC the risk of additional costs and expenses caused by the ASC's failure to provide access to records and agency personnel.

The second amended complaint seeks several categories of damages, including commissions on refunds for past overbillings and potential future savings identified in the Final Report, lost profits based on refunds and future savings that plaintiff was unable to identify, and actual costs incurred as a result of the ASC's conduct. By order entered on July 17, 2001, the court dismissed plaintiff's claim in paragraph 44 (Second Claim for Relief), ruling that any claims for unidentified refunds or savings sought in the second complaint had not been submitted to the contracting officer in plaintiff's September 22, 2000 letter (which was plaintiff's second claim letter and was submitted following *RCS I*) and that the court therefore lacked jurisdiction over any claim for refunds or savings that could have been identified absent the alleged misconduct of the ASC.[4] The

---

**3.** Plaintiff's first amended complaint alleged approximately $192,000.00 in past overbillings and approximately $260,000.00 in future savings, totaling $231,323.48 in commissions. *RCS I*, 46 Fed.Cl. at 512. The court is unable to reconcile this figure with the amounts claimed in plaintiff's second amended complaint. *See also id.* at 512 n. 3 (noting discrepancy between amount sought in first complaint and amount sought from contracting officer).

**4.** The second amended complaint stated that "RCS suffered additional damage because [WSMR] personnel refused to cooperate with RCS's audit," and that, as a result, "RCS cannot state with complete certainty all of the cost sav-

motion at bar challenges plaintiff's claims for refunds and future savings actually identified. Defendant has not moved with respect to plaintiff's claims for actual costs incurred as a result of the ASC's conduct.

## DISCUSSION

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no disputes over material facts that may significantly affect the outcome of the suit. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 1. *Refunds*

In *RCS I* the court concluded that the Government had an affirmative duty to cooperate with plaintiff. 46 Fed.Cl. at 514. However, the only government interference argued by plaintiff in the first dispositive motion concerned access to information and personnel that prevented plaintiff from identifying all past overbillings. As to the overbillings identified in the Final Report—and therefore not obstructed by ASC's interference—*RCS I* concluded that, "[b]ecause plaintiff has failed to seek reimbursement from any carrier as a predicate to recovery, plaintiff's claim for reimbursements for past overbillings ... fails to state a claim upon which relief can be granted." *Id.*

The First Claim for Relief of plaintiff's second amended complaint alleges that ASC failed to comply with section C.2.2 of the contract, which required the Government to provide authorizations and access to invoices and agency personnel so that plaintiff could obtain the necessary billing information. This claim seeks damages based on the overbillings actually identified in the Final Report. This is precisely the claim that the court rejected in *RCS I*. As discussed in that opinion, any failure by the ASC to provide access to documents and personnel goes to plaintiff's ability to identify past refunds—a

claim that the court has twice dismissed for lack of jurisdiction—not to its ability to recover refunds for overbillings actually identified.

The Second, Third, and Fourth Claims for Relief basically allege that the Government prevented plaintiff from obtaining available refunds.[5] Defendant argues that these claims are barred insofar as they seek a commission on past refunds identified in the Final Report. Under the doctrine of claim preclusion, or *res judicata*, "a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Claim preclusion attaches when (1) the parties are identical or in privity with the original parties; (2) the earlier judgment was final and on the merits of the claim; and (3) the second claim is based on the same cause of action as the first. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Additionally, the Supreme Court has stressed the importance of making sure the non-movant has had a "full and fair opportunity to litigate" the claim. *Poyner v. Murray*, 508 U.S. 931, 933, 113 S.Ct. 2397, 124 L.Ed.2d 299 (1993).

The first element is readily addressed, as the same parties were before the court in *RCS I*. As for the second element, after the court's decision in *RCS I*, the Clerk of the Court entered judgment for defendant insofar as plaintiff sought to recover $192,395.67 representing the overbillings identified in the Final Report. 46 Fed.Cl. at 518; Pl.'s Am. Compl. filed Mar. 6, 2000, ¶ 15. This decision was based on plaintiff's failure to state a claim for damages calculated according to the refunds identified in the Final Report and therefore operated on the merits. *Federated Dep't Stores*, 452 U.S. at 399 n. 3, 101 S.Ct. 2424; *Gould, Inc. v.*

---

ings which could have been realized." Compl. ¶ 44.

**5.** The Third and Fourth Claims for Relief also seek recovery with respect to future savings. As

discussed below, these claims implicate claim preclusion only to the extent that they seek recovery for refunds.

*United States,* 67 F.3d 925, 929 (Fed.Cir. 1995).[6]

With regard to the third element of claim preclusion, the Federal Circuit has adopted a "transactional" analysis for determining if the two claims are the same. *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 478–79 (Fed.Cir. 1991) (citing *Restatement (Second) of Judgments* § 24). According to the *Restatement,* claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments* § 24(1). "Under this approach, a 'contract' is considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action." *Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1336 (10th Cir.1988), *cited in Beech Aircraft Corp. v. EDO Corp.,* 990 F.2d 1237, 1246 (Fed.Cir.1993); *Restatement (Second) of Judgments* § 25 cmt. b.

The Second, Third, and Fourth Claims for Relief of plaintiff's second amended complaint allege different theories for recovering plaintiff's commission on refunds based on facts that existed at the time of the original complaint. Plaintiff alleges that "[a]t no time was RCS authorized to secure refunds without the consent of the Government," Compl. ¶ 39, and that the Government "failed to assist RCS in obtaining available refunds and credits," Compl. ¶ 40. Similarly, plaintiff alleges that the ASC "refused to seek available refunds and credits" associated with certain lines. Compl. ¶ 50. Plaintiff also alleges that the Government subsequently obtained certain refunds and credits without compensating plaintiff. Because the Second Claim, and the Third and Fourth Claims, to the extent that they seek damages based on

plaintiff's expected commission on refunds, arise from the same transaction as the claim addressed in *RCS I,* the doctrine of claim preclusion bars them.

Plaintiff concedes that "*RCS I* precludes plaintiff from claiming that it is entitled to recover a commission on the overbillings identified in its report." Pl.'s Br. filed Aug. 5, 2002, at 4 (internal quotations omitted). Plaintiff nevertheless argues that claim preclusion does not bar its second amended complaint because *RCS I* expressly dismissed its misappropriation, constructive acceptance, and interference claims for lack of jurisdiction, thus exempting those claims from any preclusive effect.

*RCS I* did conclude that it lacked jurisdiction over plaintiff's claim's based on future savings "[i]nsofar as the amended complaint alleges a constructive acceptance." 46 Fed. Cl. at 518. *RCS I* contains no such statement with regard to past refunds because no such claim was before the court at that time. As it does on the motion for summary judgment at bar, *RCS I* approached plaintiff's claims for refunds separately from its claims for future savings. In the statement quoted above, *RCS I* specifically cited paragraph 23 of plaintiff's March 6, 2000 first amended complaint, which alleged that the Government misappropriated plaintiff's recommendations for future savings. Plaintiff's first amended complaint contained no allegation that the Government misappropriated or constructively accepted the refunds identified by plaintiff, and the doctrine of claim preclusion bars plaintiff from raising such a claim now.

Plaintiff also argues that *RCS I* specifically dismissed for lack of jurisdiction its claims that the Government breached a duty of cooperation preventing plaintiff from obtaining refunds.[7] *RCS I* did recognize the Government's affirmative duty to cooperate. 46 Fed.Cl. at 514. However, the only govern-

---

6. As noted in the *Restatement.*

    [s]uch a result is warranted by the case with which pleadings may be amended, normally at least once as a matter of course, and by the unfairness of requiring the defendant to submit to a second action ... when no such amendment is sought.

    *Restatement (Second) of Judgments* § 19 cmt. d.

7. Although plaintiff concedes that "*RCS I* precludes plaintiff from claiming that it is entitled to recover a commission on the overbillings identified in its report," Pl.'s Br. filed Aug. 5, 2002, at 4 (internal quotations omitted), plaintiff does not explain how *RCS I* could have such an effect if plaintiff's duty of cooperation claims were dismissed for want of jurisdiction.

ment interference alleged by plaintiff concerned plaintiff's ability to identify overbillings, not its ability to recover those refunds. *Id.* Plaintiff's failure to cure this defect in its first amended complaint required the court to dismiss it for failure to state a claim. *RCS I* dismissed plaintiff's duty of cooperation claims for lack of jurisdiction only to the extent that those claims sought "relief because the Government prevented plaintiff from identifying all overcharges." *RCS I,* 46 Fed.Cl. at 514. The court's July 17, 2001 order, however, reaffirms that jurisdiction is still lacking as to any claim for unidentified refunds.

Ultimately, plaintiff seeks to distinguish any claim for a commission on refunds from its claims for "breach of the Government's duty to cooperate and those claims alleging constructive acceptance." Pl.'s Br. filed Aug. 5, 2002, at 4. Yet plaintiff acknowledges that a commission on refunds identified in the Final Report would constitute its "expectancy" damages under these breach theories:

> RCS's damages are appropriately measured by its expectation of fees. A measurement of damages which considers the amount of fees RCS could have earned had the Government not breached is the only means by which RCS can be put "in as good a position as he would have been had the contract been performed."

*Id.* at 6–7 (quoting *Restatement (Second) of Contracts* § 344(a) (1981)).

In *RCS I* plaintiff made a strategic decision to rest its claim on allegations that the Government prevented plaintiff from identifying the total refunds due for past overbillings.

> In this case, the United States failed to provide the information, authority and assistance it [sic] when it was contractually obligated to do so. The United States' failure to perform its contractual duties when due constitute [sic] breach. Because of the United States' breach, RCS was not

obligated to perform the potentially fruitless and prejudicial act of seeking refunds from various telecommunications service providers.

Pl.'s Br. filed Jan. 13, 2000, at 7. *RCS I* rejected this argument, holding that plaintiff's contractual duty to seek reimbursement was a predicate to recovery. 46 Fed.Cl. at 514. Under the doctrine of claim preclusion, plaintiff cannot now argue that the Government prevented it from seeking reimbursement.[8] Plaintiff is barred from asserting any entitlement to an amount representing the commission that it should have received for refunds identified in its Final Report.

### 2. *Future savings*

■ Defendant argues that the court lacks jurisdiction over any claim for future savings because the court ruled in *RCS I* that it could not review the Government's rejections of plaintiff's VECPs. Under the express terms of the contract, the court held that the merits of the contracting officer's final decisions to accept or reject recommendations are unreviewable. 46 Fed.Cl. at 515. Claim preclusion does not attach to this decision because it went to the court's jurisdiction, rather than the merits of plaintiff's claim for a commission on future savings, and specifically was dismissed without prejudice. *See* RCFC 54(b) (court may direct entry of final judgment as to one or more, but fewer than all, of the claims).

In so holding, the court relied on *NI Industries, Inc. v. United States,* 841 F.2d 1104 (Fed.Cir.1988), which upheld the enforceability of a similar contract clause excluding the contracting officer's acceptance or rejection of proposed changes to the contract from review. In *NI Industries* the Federal Circuit held: "Having found that the [contracting officer] did not accept the VECP, the Board correctly ruled that her decision not to accept it was not subject to review on the merits, unless it was shown that she acted

---

8. Plaintiff did suggest in passing in its January 13, 2000 brief, filed in conjunction with *RCS I,* that it could not have secured the refunds without the Government's consent. *See* Pl.'s Br. filed Jan. 13, 2000, at 6–7. Plaintiff, however, offered no explanation of how the Government failed to cooperate in this regard. Just as plaintiff may not

now offer new theories to recover its commission on refunds, plaintiff may not now offer additional facts it could have alleged to support its original claim. Any allegation that the Government was responsible for plaintiff's failure to seek reimbursement was subsumed in the prior adjudication.

contrary to the law or abused her discretion in making that decision." 841 F.2d at 1106. The question before the court in *RCS I,* as in *NI Industries,* was whether such clauses preclude review of the substance of the Government's decision to accept or reject a VECP. Neither court held that the Government's decision was completely unreviewable. To the contrary, *NI Industries* specifically stated that the court could review the contracting officer's decision to determine whether it was contrary to law or an abuse of discretion. Indeed, the Federal Circuit proceeded to reverse the Board's decision, finding that the contracting officer had followed improper procedures. *Id.* at 1106–07 & n. 1 ("It may be that the Board had no authority to review the agency's determination, for example, that the proposed VECP was not worthwhile, but the Board did have power to consider whether the agency acted illegally or followed improper procedures.").

■ Similarly, plaintiff remains free to challenge whether the contracting officer's decision was generally in accordance with the law and with other duties that the Government owed to the plaintiff, including the duty of good faith and fair dealing. *Derrick Electric Co. v. United States,* 220 Ct.Cl. 673, 674, 676, 618 F.2d 122 (1979) (holding that board of contract appeals had jurisdiction to review whether proposal met requirements for acceptance under regulation and terms of contract, but contracting officer's decision to reject it on merits was unreviewable). The court determined in *RCS I* that plaintiff had not alleged that the contracting officer failed to follow a contractual requirement in rejecting the recommendations in plaintiff's Final Report. 46 Fed.Cl. at 517. In its second complaint, plaintiff does make such allegations. Plaintiff alleges that the Government breached a contractual duty to the extent that it rejected the VECPs identified in the Final Report and subsequently implemented those proposals without compensation to plaintiff. Although government officials are presumed to act conscientiously and in good faith in the discharge of their duties, such an allegation, if supported by clear and convincing evidence, would establish a breach of the Government's duty of good faith and fair dealing. *Am–Pro Protective Agency, Inc. v.*

*United States,* 281 F.3d 1234, 1239–40 (Fed. Cir.2002) (establishing "clear and convincing" as burden of proof necessary to rebut presumption of Government's good faith); *Essex Electro Eng'rs, Inc. v. Danzig,* 224 F.3d 1283, 1291 (Fed.Cir.2000) ("Every contract, as an aspect of the duty of good faith and fair dealing, imposes an implied obligation that neither party will do anything that will hinder or delay the other party in performance of the contract." (internal quotations omitted)).

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for partial summary judgment is granted insofar as the First and Second Claims for Relief of the second amended complaint are dismissed.

2. Defendant's motion for partial summary judgment is granted insofar as the Third and Fourth Claims for Relief of the second amended complaint are dismissed to the extent that they seek damages calculated as a commission on refunds identified in the Final Report.

3. Defendant's motion for partial summary judgment otherwise is denied.

4. By September 15, 2002, the parties shall file a Joint Status Report proposing a schedule for further proceedings on plaintiff's remaining claims—to wit, plaintiff's Third and Fourth Claims for Relief insofar as they allege that the ASC breached a contractual duty with regard to the recommendations for future savings identified in the Final Report, and plaintiff's Fifth, Sixth, and Seventh Claims for Relief.