RCS ENTERPRISES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–156C.

United States Court of Federal Claims.

Aug. 6, 2003.

William E. Myrick, Denver, CO, for plaintiff. David Hollar, William E. Myrick & Associates, of counsel.

Nancy M. Kim, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Major Samuel Morris, U.S. Army, of counsel.

## OPINION

MILLER, Judge.

This case is before the court on defendant's third dispositive motion. Complicating adjudication of this case is the fact that plaintiff has reformulated its complaint three times. The first dispositive motion was filed in the first action; the second was addressed to the first complaint in this action; the third, to the second complaint. After the court dismissed plaintiff's complaint in the first action, plaintiff reformulated its claims into seven claims for relief in the complaint that initiated this action. That complaint was filed after two counts of the prior action had been dismissed without prejudice and therefore were subject to refiling. Defendant maintained that the first complaint in this action carried forward claims that had been dismissed on the merits, and the court agreed. Plaintiff then took occasion with its next amended complaint to restate these counts and to add a new element to its damages calculation.[1] Argument is deemed unnecessary.

## FACTS

The facts of this case are more fully set forth in RCS Enterprises v. United States, 46 Fed.Cl. 509 (2000) ("RCS I"), and are briefly repeated here for context. RCS Enterprises ("plaintiff") is a U.S. Small Business Administration (the "SBA"); certified section 8(a) contractor. See 15 U.S.C. § 637(a) (2002). On January 9, 1998, plaintiff and the ASC signed an agreement recognizing plaintiff as a section 8(a) subcontractor; the SBA signed the agreement (the "tripartite agreement") on January 13, 1998. On January 9, 1998,

plaintiff entered into a contract with the U.S. Army Signal Command ("ASC") to audit the telephone services of the White Sands Missile Range ("WSMR"). For a fee of $150.00 plus 50 percent of the refunds and savings generated by its services, plaintiff was to identify areas where ASC was owed money due to past overcharges and to recommend areas where changes could be made to save money in the future. The latter were called Value Engineering Change Proposals ("VECP's"). Plaintiff was to present its findings in a final report to ASC. Plaintiff alleges that its attempts to audit the WSMR's telephone records were met with resistance from WSMR staff and were thwarted by poorly organized records. Nonetheless, plaintiff identified $337,061.88 in commissions that it should have received from ASC.

On August 23, 1999, plaintiff brought suit in the Court of Federal Claims under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2002) (the "CDA"), 1) alleging a breach of contract due to ASC's failure to cooperate or to accept plaintiff's recommendations and 2) claiming a reasonable expectation of compensation for the services it rendered. See RCS I, 46 Fed.Cl. at 512. Defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(1), (4). The court granted defendant's motion to dismiss as to Count I, insofar as plaintiff sought to recover for past overbillings and dismissed this claim for failure to state a claim upon which relief can be granted. See RCS I, 46 Fed.Cl. at 518. The court dismissed the balance of Counts I and II without prejudice for lack of subject matter jurisdiction. See Id.

Plaintiff re-filed, on March 20, 2001, a seven-claim complaint under this docket number that corrected the jurisdictional deficiencies of the complaint addressed by RCS I. All seven claims alleged breach of contract, as follows: 1) ASC was in breach due to its failure to comply with paragraph

---

1. An order entered April 25, 2003, as amended July 8, 2003, attempted to simplify the references to plaintiff's complaints in these actions by using successive numbering, although more than one

action was involved. This attempt was unsuccessful, and the references in this opinion are to the complaints and amended complaints for each case filed.

C.2.2 of the contract; 2) ASC breached its duty to assist plaintiff in obtaining refunds; 3) ASC breached the contract by refusing to seek certain refunds and future savings associated with phone lines covered by the audit; 4) ASC breached the contract by obtaining refunds and future savings without compensating plaintiff; 5) ASC made factual misrepresentations that hampered plaintiff's performance of the contract and misrepresented charges for which it had already been reimbursed (the fifth claim for relief also alleged that ASC would be liable under the contract for plaintiff's increased costs resulting from ASC's errors); 6) the contract allocated to ASC additional costs attributable to ASC's failure to follow its own regulations in maintaining its records; and 7) ASC was liable under the contract for extra costs and expenses resulting from its failure to provide access to personnel and records.

This complaint was the subject of *RCS Enterprises v. United States*, 53 Fed.Cl. 303 (2002) ("*RCS II*"), in which the court granted defendant's motion for partial summary judgment with regard to the First and Second Claims for Relief based on the doctrine of *res judicata*. Plaintiff's Third and Fourth Claims for Relief also were dismissed based on the doctrine of *res judicata* to the extent that they attempted to recover commissions on past overbillings. The court did not address specifically the Fifth, Sixth, and Seventh Claims for Relief.

Plaintiff filed an amended complaint on October 29, 2002, in response to which defendant filed a dispositive motion, which is its third. With one exception the causes of action in first amended complaint are identical to the original complaint in this action (which was the subject of *RCS II*): In the Fifth, Sixth, and Seventh Claims for Relief in the first amended complaint, plaintiff adds a sentence to its alternative damages calculation which reads: "These damages further include actual time incurred by Accu–Rate Telecom, Inc., as determined by Accu–Rate[ ] in auditing these records ...." First Am. Compl. filed Oct. 29, 2002, ¶¶ 66, 74, 81. Plaintiff subcontracted a portion of its contract with ASC to Accu–Rate Telecom, Inc.

("Accu–Rate"). Plaintiff includes Accu–Rate's fees as part of the additional costs and expenses that it allegedly incurred as a result of ASC's alleged breach.

Defendant has moved for summary judgment on four grounds. First, defendant argues that all plaintiff's claims for past savings should be barred by *res judicata*, in accordance with the court's decision in *RCS II*. This ruling, defendant submits, should apply to the First, Second, Third, Fifth, Sixth, and Seventh Claims for Relief. Second, defendant maintains that it is entitled to judgment as a matter of law on all claims relating to future savings, because this portion of the contract violates the Anti–Deficiency Act, 31 U.S.C. § 1341 (2002) (the "ADA"). Third, defendant contends that plaintiff committed a prior material breach, thereby violating the tripartite agreement between plaintiff, ASC, and the SBA. Plaintiff allegedly breached the agreement by allowing its subcontractor, Accu–Rate, to perform the contract in its place; this breach would excuse ASC from its obligations under the contract. Finally, if the court finds that ASC breached the contract, defendant argues that plaintiff had a duty to mitigate damages when it learned that ASC had intermingled private and government telephone lines. The court addresses each of these arguments in turn.

## DISCUSSION

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no disputes over material facts that may significantly affect the outcome of the suit. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

1. *The First and Second Claims for Relief*

Plaintiff re-filed the first two claims in its first amended complaint despite the court's dismissal of those claims in *RCS II*. *See* 53 Fed.Cl. at 309. *Res judicata* has two components: issue preclusion and claim preclusion. *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1575 n. 7 (Fed.Cir.

1984). Issue preclusion's principal components are direct and collateral estoppel, which preclude re-litigation of issues between parties; claim preclusion "forecloses assertion of the same transactional facts as a different cause of action or theory." *Jarboe–Lackey Feedlots, Inc. v. United States,* 7 Cl.Ct. 329, 336 (1985). Claim preclusion thus prevents the litigation of theories that have never been raised, as long as the theories are based on the same set of operative facts.

Issue preclusion attaches when 1) the issues to be decided are identical to those in a prior action, 2) the issues were raised and "actually litigated" in that action, 3) "the determination of those issues in the prior action was necessary and essential to the resulting judgment," and 4) the precluded party was represented in the previous action. *Mother's Rest., Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983). Using *Mother's* four-part test, plaintiff's First and Second Claims for Relief are precluded by *RCS I,* in which they were dismissed on the merits. 46 Fed.Cl. at 518. The court recognized that issue preclusion attached to these two claims in *RCS II.* 53 Fed.Cl. at 309.

First, the claims are the same as those presented in *RCS I.* Second, these issues were litigated in the previous action. The court held that "under the contract plaintiff had the sole responsibility to seek reimbursements directly from the telephone carrier(s). Thus, plaintiff cannot maintain a cause of action against the United States for those amounts." *RCS I,* 46 Fed.Cl. at 514 (footnote omitted); *see also RCS II,* 53 Fed.Cl. at 309. Third, the rulings on the First and Second Claims for Relief were not dicta; they were necessary and essential to the resulting judgment. Finally, the precluded party—plaintiff—was represented in the prior action. Therefore, the First and Second Claims for Relief are barred.

### 2. *The Third Claim for Relief*

In *RCS II* the court granted partial summary judgment on the Third Claim for Relief to the extent that plaintiff sought to recover damages calculated as commissions on past savings. 53 Fed.Cl. at 309. Defendant contends that summary judgment should have been granted in full on the third claim in *RCS II,* because it pertains to past refunds alone. Indeed, as pleaded in the first amended complaint, the conduct constituting the alleged breach is ASC's refusal "to seek available refunds and credits associated with the telephone lines listed for audit in the Contract." First Am. Compl. ¶ 50. Plaintiff makes no allegations regarding the future savings that ASC may have obtained. Accordingly, plaintiff's Third Claim for Relief is barred in its entirety by this court's ruling in *RCS II,* which dismissed it on the merits. 53 Fed.Cl. at 309.

### 3. *The Fourth Claim for Relief*

The fourth claim of plaintiff's first amended complaint alleges: "To the extent that the Government has itself obtained available refunds, credits and VECP's identified in [plaintiff's] audit, without compensation to [plaintiff], this conduct also constitutes breach." First Am. Compl. ¶ 54. The refunds and credits components of plaintiff's claim fall under the category of past savings and are therefore precluded under the doctrine of *res judicata. See RCS II,* 53 Fed.Cl. at 309.

■ In contrast, the VECP's to which plaintiff alleges entitlement fall under the category of future savings. Defendant argues that the future savings component of plaintiff's first amended complaint violates the ADA and thus is illegal. The ADA provides, in pertinent part, that an "officer or employee of the United States Government ... may not ... involve [the] [G]overnment in a contract or obligation for the payment of money before an appropriation is made unless authorized by law...." 31 U.S.C. § 1341(a)(1)(B). "The Anti–Deficiency Act bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." *Hercules, Inc. v. United States,* 516 U.S. 417, 427, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (citing § 31 U.S.C. 1341). The Court of Federal Claims has explained: "Congress appropriates funds for only a single year's obligations, and the Anti–Deficiency Act prohibits anyone from obligating the [G]overnment in excess of the

dollars appropriated by Congress." *Solar Turbines Int'l v. United States,* 3 Cl.Ct. 489, 495 (1983) (footnote omitted).

■ Paragraph B.2 of the contract provides:

The Basic contract period is from January 9, 1998, through the completion of the initial audit. Two (2) option years have been included, to provide compensations for future recommendations and cost reduction strategies, to be agreed upon by the parties. These will be exercised by separate contract modifications, if applicable.

Paragraph B.3 of the contract itemizes the supplies and services under the contract, including option year 1999 and option year 2000. The paragraph stipulates: "The option years are included only to provide a schedule for payment of any savings share due the Contractor, No audits are to be performed in the option years, unless the parties agree . . . ."

Defendant maintains that the contract violates the ADA because it provides that the option years will be exercised by separate contract modifications, which would obligate the Government to expend funds beyond a single year, hence involving the Government in a contract or obligation for the payment of money before an appropriation was made. Citing *E.I. DuPont De Nemours & Co. v. United States,* 54 Fed.Cl. 361 (2002), defendant argues that the paragraphs in the contract that violate the ADA are invalid and unenforceable. In *DuPont* the court found that an open-ended indemnification clause violated the ADA because it had "no funding or express statutory authority." *Id.* at 372. The court also invalidated the reimbursement clause in the contract because it had not been specifically authorized by law. *Id.*

*DuPont* is easily distinguishable from the case at bar. The parties do not dispute that no statute provided for multi-year payments under the contract. The question is whether the contract obligated the Government to make a payment before money was appropriated for that purpose. The contract in *Du-Pont* contained an open-ended indemnity clause that "place[d] the risk of virtually all liabilities and the burden of practically all costs on the [G]overnment. This is, of course, a broad interpretation that provides no cap for indemnification costs." 54 Fed.Cl at 370. The contract involved in this case, on the other hand, included two options, renewable by the Government, at the termination of the first contract year.

Arguing that the contract does not violate the ADA, plaintiff cites a decision by the Court of Federal Claims stating that "multi-year contracts do not violate the Antideficiency Act as long as they provide that the Government's obligation terminates at the end of each fiscal year and is renewed by the exercise of the option by the Government." *Cray Research, Inc. v. United States,* 44 Fed.Cl. 327, 333 (1999) (internal quotation marks omitted). The issue in *Cray Research* was whether a one-year contract, which contained options at the end of each year, violated the ADA. The court held:

[U]nder [Supreme Court precedent in *Leiter v. United States,* 271 U.S. 204, 46 S.Ct. 477, 70 L.Ed. 906 (1926) ], if an agency does not have multi-year contracting authority . . . the only authorized course of action (apart from separate fiscal year contracts) is a one-year contract followed by a series of government renewal options. Each renewal option must be (1) contingent on future congressional appropriations, and (2) exercised only by the government's affirmative action.

*Cray Research,* 44 Fed.Cl. at 332.

In *Cray Research* plaintiff's interpretation of the contract would render it invalid because the contract required the Government to pay over the course of multiple years in violation of the ADA. Defendant contended that the contract contained an option, exercisable by the Government, which saved the contract from invalidation by the Act. The court was guided by the following rule of contract interpretation: " 'When a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted.' " *Cray Research,* 44 Fed.Cl. at 333 (quoting *Hobbs v. McLean,* 117 U.S. 567, 576, 6 S.Ct. 870, 29 L.Ed. 940 (1886)). The court reasoned that plaintiff's reading of the option provision in the contract would make the contract illegal,

while defendant's prevented it from running afoul of the ADA; thus, the court adopted defendant's interpretation to save the contract from invalidation.

Similar to plaintiff in *Cray Research*, in the case at bar, defendant argues:

> [T]he mandatory language of the contract, as confirmed by [plaintiff's] testimony during the deposition of [Russ C. Simpson, plaintiff's President], *required* the Government to exercise the two option years, [and therefore] the Government did not "retain[ ] the option to renew the contract each year after the base year," and, as a result, pursuant to *Cray Research*, the contract violated the ADA.

Def.'s Br. filed Apr. 14, 2003, at 15 (citing *Cray Research*, 44 Fed.Cl. at 333). While defendant's reading of the contract would render it illegal, plaintiff's would render it nonsensical. If the two years after the base years were true options, the Government merely could decline to exercise its option with respect to those years. Paragraph 16 of plaintiff's complaint is based entirely on paragraphs B.2 and B.3 of the contract, and the damages that plaintiff calculates are premised on the two option years of alleged "future savings." The court must therefore conclude that the contract, on its face, violates the ADA.

Plaintiff retorts that an alleged violation of the ADA does not shield the Government from liability, noting that an agency faced with a possible ADA violation has an affirmative duty to act to prevent the violation or at least mitigate its consequences. For support plaintiff cites *Wetsel–Oviatt Lumber Co. v. United States*, 38 Fed.Cl. 563 (1997). Plaintiff lumber company in *Wetsel–Oviatt* entered into four contracts with the Government under which the Government would sell, and plaintiff would cut and remove, timber. Subsequent to executing the contract, the Government conducted an environmental analysis and made a recommendation that certain harvesting restrictions be imposed on the contracts. Plaintiff then appealed to the contracting officer seeking compensation for timber that the Government had deleted from two of the contracts. The contracting officer denied plaintiff's claim, assuring plain-

tiff that it would be compensated for any deleted timber, but that the contracting officer was unable to "'make a determination about modification of [the contracts] ... in light of the Anti–Deficiency Act.'" *Id.* at 567.

Plaintiff subsequently sued in the Court of Federal Claims. Defendant admitted that, "[u]pon completion of environmental analysis, the Forest Service usually releases timber, modifies the timber sale contracts, and pays the contractors amounts due for replacement value and out of pocket expenses." 38 Fed. Cl. at 567. The Government, however, did not compensate plaintiff, arguing, *inter alia*, that it nevertheless was not in breach because the contracting officer was not authorized to act due to prohibitions of the ADA. The court held in plaintiff's favor, stating: "Despite [the Government's] protestations otherwise, neither the Appropriations Clause of the Constitution, nor the Anti-deficiency Act, shield[s] the government from liability where the government has lawfully entered into a contract with another party." *Id.* at 570 (citing *New York Airways v. United States*, 177 Ct.Cl. 800, 369 F.2d 743, 748 (1966); *Ferris v. United States*, 27 Ct.Cl. 542, 546, 1800 WL 2022 (1892); *Parsons v. United States*, 15 Ct.Cl. 246, 247 (1879)).

Despite its strong language, the facts of *Wetsel–Oviatt* are not similar to those in the case at bar. In that case the contract was not illegal from its inception; it conflicted with the ADA only after the environmental analysis. The terms of the contract in this case violate the ADA by placing a requirement on the Government to pay plaintiff over the course of two years. Because the contract terms that require payment of future savings therefore are illegal, the future savings component in plaintiff's first amended complaint is implicated.

Plaintiff also argues that the Government caused any potential violation of the ADA, noting that deposition testimony of Angela F. Coats, Contracting Officer, suggests that ASC primarily wrote the contract. It cites the Restatement to argue that the appropriate form of relief, assuming, *arguendo*, that ASC made a mistake by drafting a contract that violates the ADA, is "reformation or avoidance *with restitution*." Pl.'s Br. filed

Mar. 27, 2003, at 13 (citing Restatement (Second) of Contracts, §§ 151–158 (1981)). Defendant responds that it no more "caused" the violation of the ADA than plaintiff, because the latter contributed significantly to the language in the contract. Defendant also cites Ms. Coats's testimony to support its position and further argues that, even if ASC did write the contract, the section in the Restatement that plaintiff cites is the doctrine of mistake; in this case the applicable doctrine is illegality.

■ Defendant has established that the contract is illegal. Plaintiff cites no precedent to suggest that an illegal contract may be enforceable depending on which party "caused" the contract to contain the illegal terms. The court finds, however, that a material issue of fact is present regarding what damages, if any, are due plaintiff.

The Federal Circuit has held that an agency's failure to comply with applicable regulations does not render a contract void *ab initio*. *See American Tel. & Tel. Co. v. United States*, 177 F.3d 1368, 1376 (Fed.Cir. 1999) (*en banc*), *remanded*, 48 Fed.Cl. 156, 160 (2000), *affirmed*, 307 F.3d 1374 (Fed.Cir. 2002). This is so because "[t]he invalidation of a contract after it has been fully performed is not favored." 177 F.3d at 1375. Where "a breach of law is inherent in the writing of the contract, reformation is available despite the contractor's initial adherence to the contract provision later shown to be illegal." *LaBarge Prods., Inc. v. West*, 46 F.3d 1547, 1552 (Fed.Cir.1995). Therefore, the court reserves for trial the question of what damages, if any, are due plaintiff, considering that it rendered performance by submitting VECP's—an action that implicates its claim for future savings.

### 4. *The Fifth, Sixth and Seventh Claims for Relief*

In its Fifth Claim for Relief, plaintiff contends that it audited telephone lines that were not the Government's. Because of ASC's "misrepresentation and/or errors" in identifying the telephone lines that belonged to it, plaintiff allegedly incurred "substantial additional costs and expenses." First Am. Compl. ¶ 63. The Sixth Claim for Relief alleges that ASC represented to plaintiff that its records were maintained in accordance with Army regulations, although that was, in fact, not the case. The Seventh Claim for Relief pleads that ASC did not give plaintiff access to telephone records and personnel, thereby causing plaintiff to incur additional costs and expenses. All three claims contain a statement that damages include, but are not limited to, the past savings and future savings components outlined in paragraphs 15 and 16 of the first amended complaint. In the alternative, the three claims allege that damages incurred as a result of ASC's misconduct include the time that plaintiff and Accu–Rate spent auditing the records, multiplied by plaintiff's and Accu–Rate's employees' hourly rates.

These three claims for relief are barred by the doctrine of issue preclusion. The issues to be decided are the same as in *RCS I*: All three claims allege that ASC hindered plaintiff in its work, which is tantamount to an allegation that, absent ASC's meddling, plaintiff could have identified more past overbillings under the contract. Plaintiff cannot save these claims from preclusion by adding a damages formulation that is based on the future savings calculation outlined in paragraph 16, because the substance of the claim itself is not related to future savings. All three claims concern ASC's actions during the audit and are wholly unrelated to potential future savings. *RCS I* ruled that plaintiff's claims for past overbillings were barred. 46 Fed.Cl. at 518. The court's decision constitutes a final decision on the merits that was essential to the resulting judgment. Therefore, defendant is entitled to summary judgment as to the Fifth, Sixth and Seventh Claims for Relief.

### 5. *Prior material breach*

■ Defendant argues that ASC's performance and obligations under the contract should be excused because plaintiff committed a prior material breach. Defendant presents three letters signed by plaintiff and the tripartite agreement signed by plaintiff, ASC, and the SBA confirming that plaintiff is a section 8(a) subcontractor, *i.e.*, a disadvantaged business, under the Small Business

Act, 15 U.S.C. § 637(a). Plaintiff also acknowledges its section 8(a) status in its first amended complaint. First Am. Compl. ¶ 1. Defendant charges plaintiff with violating the tripartite agreement by hiring a subcontractor that performed more than 50 percent of the work under the contract as measured by the cost of contract performance.

Section I–23 of the contract incorporates 48 C.F.R. (FAR) § 52.219–14 (2002), which states, in part, that "[a]t least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern."[2] Plaintiff construes the provision to apply only to the cost of contract performance and argues that "[i]t is not a specific limitation on the number of hours by employees of the contractor's and any subcontractor's employees." Pl.'s Br. filed Mar. 27, 2003, at 20. Defendant relies on a similar interpretation of the clause, as evidenced by its assertion that plaintiff has "expended less than 40% of the labor cost of contract performance, in violation of the terms of the contract and the section 8(a) set-aside program." Def.'s Br. filed Feb. 24, 2003, at 13.

Although the parties generally agree on the construction of the provision, material facts regarding Accu–Rate's role in performing the contract remain in dispute. Plaintiff insists that it did not violate any terms of the contract, as "the arrangement between [plaintiff] and Accu–Rate was fully disclosed and entirely legal" as part of the contract with ASC. Pl.'s Br. filed Mar. 27, 2003, at 22–23. Plaintiff denies there was a prior material breach. According to section B.1 of the contract, "[p]erformance will be in accordance with [plaintiff's] proposal, hereby incorporated by reference . . . ." The relevant portion of plaintiff's proposal discussed Accu–Rate's role and qualifications as part of

plaintiff's "team." According to plaintiff, due to incorporation of plaintiff's proposal into the contract, ASC agreed to Accu–Rate's participation in the audit, and thus Accu–Rate's participation cannot be a basis for declaring the contract void.

The question devolves to whether the 50 percent cost of contract performance for personnel mandated by the FAR applies to plaintiff's team or to plaintiff individually. If the clause applies to plaintiff's team, which performed the entire contract, plaintiff would not be in breach. If the clause applies to plaintiff individually, the conduct would constitute a breach, as plaintiff itself did not perform the required 50 percent of the cost of contract performance. This is an issue to be explored at trial.[3] Accordingly, defendant's motion for summary judgment on the ground of prior material breach is denied.

6. *Mitigation*

■ In the Fifth, Sixth, and Seventh Claims for Relief, plaintiff alleges that ASC misrepresented information material to completing the audit. First Am. Compl. ¶¶ 56–81. The misrepresentations included confusion over which lines were governmental lines to be audited under the contract, and which lines were private, non-governmental lines that should have been excluded from the audit. First Am. Compl. ¶¶ 57–66. Defendant argues that plaintiff would have understood these distinctions had it fulfilled its contractual duties and attended all the required pre-performance meetings. Thus, according to defendant, any breach by ASC would be vitiated by plaintiff's failure to mitigate damages, thereby rendering plaintiff ineligible to recover damages accrued after the time ASC's alleged breach was discovered. *See Quiman, S.A. de C.V. v. United States,*

---

2. Plaintiff argues that the document on which defendant actually relies to show plaintiff breached the tripartite agreement is the Statement and Certification for Proposal provided to the SBA. Plaintiff contends that this document is not part of the contract; defendant counters that the Certification is incorporated by reference into the tripartite agreement. The court need not address this argument, however, because the requirement that plaintiff perform at least 50 percent of the cost of contract performance appears in section I–23 of the contract.

3. Plaintiff also argues that defendant actually was asserting the affirmative defense of frustration of purpose based on the Statement and Certification for Proposal. This would waive the defense pursuant to RCFC 8(c), because defendant did not raise it in any prior pleading. The court rejects this argument. Defendant pled the affirmative defense of prior material breach in paragraph 86 of its answer based on the same facts.

39 Fed.Cl. 171, 185 (1997), *aff'd,* 178 F.3d 1313 (Fed.Cir.1999) ("It is clear that a non-breaching party has a duty to attempt to mitigate its damages following another party's breach of contract."); *Midwest Indus., Painting of Florida, Inc. v. United States,* 4 Cl.Ct. 124, 133 (1983) ("[T]he nonbreaching or injured party may not recover those damages which could have been avoided by reasonable precautionary action on its part.").

Mr. Simpson, plaintiff's President, testified by deposition that he knew of ASC's alleged breach on March 19, 1998. Thus, defendant argues, plaintiff should not recover any damages arising after that date. Plaintiff, however, asserts that "the fact of commingling (if true) was either unknown or concealed at least through June 18, 1998 ...." Pl.'s Br. filed Mar. 27, 2003, at 16. The court is unable to reconcile the support for these contradictory statements regarding the date on which plaintiff became aware of ASC's alleged breach. Issues of material fact thus exist regarding when an alleged duty to mitigate arose, and whether or not plaintiff carried out that duty.

The parties also dispute whether, if a duty to mitigate did arise, plaintiff made all reasonable efforts to avoid loss. Given the fact that Mr. Simpson testified that plaintiff may have turned down the contract had it known of the difficulties in distinguishing which lines were to be audited, defendant suggests that reasonable mitigation conduct would have been to discontinue the audit. Plaintiff responds that it alerted the contracting officer to a potential problem with performance, and the contracting officer instructed plaintiff to continue with the audit. Had plaintiff refused to follow the contracting officer's instructions, it may have been held in breach. In any event, neither plaintiff nor defendant presents any case law supporting its respective position regarding what would constitute a reasonable effort to mitigate damages in this situation. Defendant's motion for summary judgment as to mitigation therefore is denied.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment is granted consistent with the foregoing and is otherwise denied. The First, Second, Third, Fifth, Sixth, and Seventh Claims for Relief are dismissed with prejudice. The sole claim to be tried is plaintiff's claim based on future savings for one year's performance. Defendant substituted new counsel after briefing this third dispositive motion. Defendant is advised that the court will not entertain another dispositive motion.

2. The parties shall file a Joint Status Report by August 27, 2003, with a proposed schedule for all pretrial and trial proceedings under RCFC Appendix A, including place of trial.